## R. E. NEWMAN v. THE STATE.

### No. 4447.  Decided February 24, 1909.

**1.—Local Option—Intoxicating Liquors.**

Where upon trial for a violation of the local option law the evidence did not show that the liquor with which experiments were made as to its intoxicating qualities came from defendant's place of business or was such as that sold by defendant, the testimony was inadmissible. See court's comments on this character of experiment.

**2.—Same—Charge of Court—Mistake of Fact.**

Where upon trial of a violation of the local option law the evidence clearly raised the issue of a mistake of fact on the part of the defendant and his honest belief that the liquor in question was not intoxicating, the same should have been submitted to the jury. Following Uloth v. State, 48 Texas Crim. Rep., 295.

Appeal from the County Court of Nolan. Tried below before the Hon. John J. Ford.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $100 and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*F. J. McCord,* Assistant Attorney-General, and *Crane & Myres,*

for the State.—On question of intoxicant: Taylor v. State, 49 S. W. Rep., 589.

RAMSEY, JUDGE.—Appellant appeals from a conviction had in the County Court of Nolan County on a charge of violating the local option law.

The sale in question was alleged to have been made to one R. M. Mayfield. The sale was proven by his testimony, and he also testified to the fact that the liquor in question was intoxicating. There was a vigorous controversy as to the intoxicating quality and character of the liquor sold, appellant producing many witnesses who testified, in substance, that the liquor was not intoxicating. Among other witnesses introduced by the State was T. E. Crutcher, who testified, among other things, as shown by bill of exceptions, as follows: "I have drank 'Tin Top,' or what was sold by Raymond Newman. I think I had one dozen and a half bottles that came from Raymond Newman's place of business, and one dozen and a half that came from Rainbolt's place of business. I gave Willice Barbee the money, with instructions to go and buy from Newman's place of business one half dozen bottles, and from Rainbolt's place of business one half dozen bottles. He delivered the stuff to me in separate packages; and on his statement I labeled the stuff that came from Newman's, and also the stuff that came from Rainbolt's, and set it in the vault and locked it up. Of my own personal knowledge I don't know where this dozen bottles of stuff came from; neither do I know which of the packages, if any, came from Newman's or that came from Rainbolt's. I only have Willice Barbee's word as to where the stuff came from. I first drank two bottles that were supposed to have come from Rainbolt's, then I drank three bottles that were supposed to have come from Newman's. I mixed the drinks. Can't say for sure which one of these drinks produced intoxication. I drank five bottles in all. The stuff that I drank produced intoxication." This testimony was objected to for the following reasons: "Because the witness shows by his evidence that if in fact he was intoxicated after drinking the five bottles, that he did not know which of the separate drinks made or produced intoxication, in that his evidence shows that he mixed the two drinks, and after intoxication, if intoxicated, he (witness) not knowing which drink produced such intoxication. 2. Because in the admission of this evidence it was hearsay as to defendant, in that the witness could not have known where the stuff he claims to have gotten intoxicated on came from, except from the statement of Willice Barbee, the person that delivered same to witness. 3. Because it made the defendant answer for the intoxicating effects of the goods purchased from Rainbolt's as well as to the intoxicating effects, if any, of the goods that came from defendant's place of business, thereby making defendant answer

for witness' intoxication, if any, whether such intoxication was produced by the stuff that came from Rainbolt's or whether it came from defendant's place of business, and the witness testifying not knowing where either of said drinks came from except what had been told him, by Willice Barbee, who delivered same to witness. 4. That in the admission of this evidence, the same was highly prejudicial to the rights of the defendant before the jury, in that if the jury believed the witness, to the extent that witness became intoxicated, that the jury found upon such testimony against the defendant, though witness might have gotten drunk or intoxicated on the drink that came from Rainbolt's." In this connection it should be said that the witness Barbee was not produced. The testimony of Mr. Crutcher both as contained in the bill of exceptions and an inspection of his evidence as set out in the statement of facts shows beyond doubt or controversy that he had no personal knowledge of where these bottles of liquor came from, and there was no direct proof from any source that any of them came from appellant's place of business. Unless a showing was made that the liquor drank by the witness came from appellant's place of business and was at least of the same general character as that sold to Mayfield, the court ought not to have admitted testimony as to the intoxicating quality of said liquor. Again, it is very singular that the court would have admitted the testimony in any event in view of the fact that the witness testified that he drank five bottles of liquor, three of which came, as he believed, from appellant's place of business, and two of which came from another place, and was unable to say which of the drinks produced intoxication. In this connection we have no doubt that these drinking tests are all executed and performed in good faith. We could hardly ascribe any other motive to the sheriff as the chief executive officer of the county; and yet it must be confessed that these experiments strike us as a bad practice. If in any case they are to be tolerated or permitted it should only be where a fairly clear showing is made of the similarity of the liquors tested with those sold and that they came from and were traced to the place of business of the party charged, and intoxication was produced from such liquors and not from liquor obtained from some other source or person.

A special charge was requested by counsel for appellant in which he sought the submission of the issue of a mistake of fact on the part of appellant and of his honest belief that the liquor in question was not intoxicating. This charge should have been given. In the case of Uloth v. State, 48 Texas Crim. Rep., 295, it was held that, where in a local option prosecution evidence was introduced that the liquor alleged to have been sold was not intoxicating, and that if it was it was unknown to defendant and an honest mistake on his part, the court should have submitted both of these issues and defined the term intoxicating liquors. This has since then

been the settled rule of this court. In this case it should be stated this issue was clearly raised by the testimony and there was evidence distinctly sustaining it.

For the errors discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*